FILED
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT DISTRICT OF MARYLAND
## FOR THE DISTRICT OF MARYLAND

2014 MAY 23  P 12: 13

CLERK'S OFFICE
AT BALTIMORE

ALTIMONT M. WILKS, 41548-037          *
         Petitioner,

v.                                    *   CIVIL ACTION NO. JKB-12-1355 DEPUTY

WARDEN J. PHILLIP MORGAN             *
         Respondent.

*****

## MEMORANDUM

### Procedural History

The above-captioned 28 U.S.C. § 2254 petition for writ of habeas corpus attacks the legality of petitioner Altimont M. Wilks's ("Wilks") 2006 convictions in the Circuit Court for Frederick County. ECF No. 1. On May 15, 2012, respondent was directed to answer the petition. ECF No. 3. In an initial response, respondent asserted that the petition should be dismissed in its entirety unless Wilks waived review of an unexhausted claim. ECF No. 7. In his reply, Wilks claimed that the "unexhausted" ineffective assistance of appellate counsel claim at issue was in fact raised during the direct appeal process. ECF No. 8.

On July 18, 2013, the court issued a Memorandum and Order which afforded Wilks the option of waiving consideration of the unexhausted claim and proceeding on his remaining claims, recognizing that he may not later seek review of the unexhausted claim without first obtaining authorization from the federal circuit court or, in the alternative, having the court dismiss the entire petition without prejudice with the knowledge that he may be barred from consideration of any of his claims in the future. ECF No. 19. Wilks responded indicating his wish to waive his unexhausted claim. ECF Nos. 20 & 21. Respondent was granted additional

time to file a substantive answer to the two remaining exhausted grounds in the petition. ECF

No. 22. Respondent's answer followed, along with Wilks's reply. ECF Nos. 25 & 26.

The matter is ready for dispositive review. The court finds no need for an evidentiary

hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*

and Local Rule 105.6 (D. Md. 2011); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000)

(petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For reasons to follow, the

petition will be denied and dismissed with prejudice.

### **Factual History**

In 2004, Wilks was charged with drug-related offenses in the Circuit Court for Frederick

County. ECF No. 7 at Ex. 1, pg. 5. On June 1, 2006, a hearing was held on Wilks's motion to

suppress evidence seized by the police. The motion was denied by Judge John H. Tisdale. *Id.* at

Ex. 1, pg. 8.

The facts of the case, as described by the Court of Special Appeals of Maryland, are as

follows:

> Appellant was arrested at the Quality Inn Hotel in Frederick County, Maryland on
> the night of July 23, 2004, after officers searching him found a plastic baggie
> containing crack cocaine in the right front pocket of his jeans. Early the
> following morning, the police searched the house of appellant's girlfriend,
> Michelle Biggus, with whom he lived, and found a 9 millimeter handgun and a
> loaded magazine. Prior to trial, appellant moved to suppress all of the evidence
> seized by police on July 23 and 24, 2004. At the hearing held on June 1, 2006,
> appellant challenged the seizure, arguing that the officers illegally stopped him
> while he was walking down the hallway at the hotel and illegally searched him.
> Appellant also challenged the validity of the consent given by Biggus to search
> the house.
>
> After a hearing, the trial court denied appellant's motion to suppress. The court
> found that the initial encounter between appellant and police at the hotel and the
> search of his person were consensual. The court also found that while appellant

had standing to challenge the search of Biggus' house, the consent given by Biggus was valid.

According to the State's proffer of facts at the suppression hearing, the Frederick Police Department Drug Unit was working undercover at the Quality Inn Hotel on July 23, 2004. At the hotel, the police arrested two people after they bought drugs from a confidential informant. One of the individuals arrested, in an attempt to bargain with the police, told them that he could call a drug dealer named "Thunder" and have him deliver a large quantity of crack cocaine to the hotel. When this information was relayed to officers in the Drug Enforcement Unit, one of the officers recognized the name "Thunder" as a possible nickname for Wilks.

The individual offering the information called Thunder on his cell phone and arranged to have Thunder deliver one half ounce of crack to Room 152 at the hotel. A short time later, the individual received a call on his cell phone from Thunder, who said he was outside of the hotel. A few minutes later Thunder knocked on the door of Room 152. Thunder entered the room and asked for the individual he spoke to on the phone. The confidential informant told Thunder that the individual who phoned him had left, but she had the money. Apparently suspicious, Thunder was unwilling to complete the buy and left the room.

Even though the police were conducting surveillance, they were unable to see the person who knocked on the door of Room 152, nor were they able to hear the conversation that took place between the confidential informant and Thunder. At the suppression hearing, the State proffered that Officer Cassidy and Officer Weaver, of the Frederick County Police, immediately left Room 154, where they were located, and proceeded down the hallway. Once in the hallway, they "observed a black male in the hallway around the corner from Room 152." Cassidy approached the black male, later identified as Wilks, and Wilks stated, "That ain't me, I'm not with that shit." Cassidy then asked Wilks for his identification, and Wilks produced a Maryland driver's license with the name Alimont [sic] Marks Wilks on it. Weaver then asked Wilks if he could search him for drugs. Wilks replied, "Yes, go ahead." Weaver then searched Wilks and found a plastic baggie containing crack cocaine inside Wilks' right front pocket. Wilks was then arrested.

After he was arrested, he told the police that his girlfriend Michelle Biggus had driven him to the hotel, but that "she was not involved in this." The police went to the car to speak to Biggus, and with her consent, followed her to her house and searched it. In an upstairs bedroom that was used exclusively by Wilks, the police found a black bag containing cocaine, marijuana, a 9 millimeter handgun, and a loaded magazine.

ECF No. 7 at Ex. 2.

3

Based upon an agreement with the prosecutor, Wilks pled not guilty to count one and fourteen of the indictment and the case proceeded to trial on an agreed statement of facts. All other charges were nolle prossed. The trial court found Wilks guilty of one count of possession with intent to distribute cocaine and one count of a firearm offense in connection with drug trafficking. ECF No. 25, Ex. 14 at 9-33. On October 31, 2006, Wilks was sentenced to concurrent terms of eight years on the drug count and five years (without parole) on the firearm count. Both sentences were, however, to run consecutive to a ten-year federal sentence Wilks already was serving.

On direct appeal Wilks argued that the trial court erred in denying his motion to suppress. ECF No. 7 at Ex. 2. On April 16, 2009, the Court of Special Appeals of Maryland affirmed the conviction. *Id.* Petitioner's petition for writ of certiorari was denied by the Court of Appeals of Maryland on July 21, 2009. *Id.* at Exs. 3 & 4. A petition for certiorari was not filed with the U.S. Supreme Court.

On October 26, 2009, Wilks filed a post-conviction petition in the Circuit Court for Frederick County, seeking to modify his state sentence to run concurrently with his federal sentence. ECF No. 7 at Ex. 5. Judge Julie Stevenson-Solt dismissed the petition without prejudice on January 22, 2010. *Id.* at Ex. 1 at pg. 12; Ex. 8. On July 19, 2010, Wilks filed another post-conviction petition, arguing that (1) he was denied pre-trial custody credits and was owed 29 months credit as to his state sentence; and (2) he was denied the opportunity to secure witnesses (two arrestees and a confidential informant) favorable to the defense under his Sixth Amendment right to compulsory process. *Id.* at Ex. 9. In July of 2011, Wilks's counsel filed a supplemental petition for post-conviction relief alleging that trial counsel was ineffective for

4

failing to file a motion for reconsideration of sentence. ECF No. 7 at Ex. 10. On August 16, 2011, a post-conviction hearing was held addressing the three grounds raised in the self-represented and counseled post-conviction petitions. *Id.* at Exs. 1 & 11. On October 18, 2011, Judge Stevenson-Solt granted Wilks the right to file a belated motion for reconsideration of sentence, but otherwise denied the claims. *Id.* at Exs. 1 & 11. Leave to appeal was not sought. On November 15, 2011, Wilks filed a motion for reconsideration of sentence. *Id.* at Ex. 11 at pg. 14. According to the state court docket the motion remains pending and will not be reviewed by the state court until such time as Wilks requests a hearing on the motion.

The instant petition, received for filing on May 3, 2012, raises the following exhausted grounds:[1]

1.  The Court of Special Appeals of Maryland deprived petitioner of full and fair review by declining to address a preserved appellate claim regarding the "consensual element that led to the search of his person and thereafter, his arrest and conviction;" and

2.  The Court of Special Appeals of Maryland's decision to affirm the trial court's denial of a motion to suppress was unreasonable under the facts and U. S. Supreme Court precedent.

ECF No. 1.

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

Respondents do not contend, and the court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). Further, Wilks no longer has any state direct review or collateral review remedies available to him with respect to

---

[1]   As noted, Wilks waived his first ground relating to appellate counsel's effectiveness. ECF Nos. 20 & 21.

the remaining claims raised in this court. His claims are exhausted for the purpose of federal habeas corpus review.

Procedural Default

Before Wilks may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); 28 U.S.C. § 2254(b) and (c). In Maryland, this may be accomplished by raising certain claims on direct appeal and, for other claims, by way of post-conviction proceedings. Exhaustion is not required if at the time a federal habeas corpus petition is filed the petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). The court does not find that Wilks's remaining claims have been procedurally defaulted.

6

## Standard of Review

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Wilks's claims will be analyzed under the statutory framework of the federal habeas statute at 28 U.S.C. § 2254, which sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7(1997); *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, __U.S. __, __, 131 S.Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 134 S. Ct. 1697, 1702 (2014), quoting *Harrington v. Richter*, __U.S. __, __, 131 S. Ct. 770, 786-87 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court

7

precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 785 (internal quotation marks omitted).

Further, under § 2254(d)(2) "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts." *Id.* "[A] a federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 599 U.S 766, 773 (2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state

8

court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

### Analysis

Both remaining grounds seemingly attack the consensual element of the personal search on Wilks at the Quality Inn Hotel and the search of Ms. Biggus's residence. These issues were fully raised at a pre-trial motions hearing and on direct appeal.

The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established and well known to this court. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U. S. 465, 494 (1976) (footnotes omitted). Although *Stone* did not define the phrase "full and fair opportunity to litigate," this circuit has concluded that:

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court. Second,...when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

Wilks's protestations to the contrary, he could and did challenge the validity of the search and seizure by filing a self-represented motion to suppress. On June 1, 2006, an extensive suppression hearing was held before Frederick County Circuit Court Judge John Tisdale and the motion to suppress was denied. ECF No. 25 at Ex. 13, Tr. at pgs. 359-374. Wilks challenged the consensual nature of the personal search of his body at the Quality Inn and the search of Ms. Biggus's home; the same issues were raised in his direct appeal to the Court of Special Appeals. ECF No. 7 at Ex. 2. The Court of Special Appeals, after thoroughly examining the facts surrounding the seizure of the evidence as well as the legal reasoning of the circuit court in denying the motion to suppress, upheld the trial court's denial of Wilks's motion.[2]  *Id.*

After review of the suppression hearing transcript and appellate court opinion, the court finds that Wilks clearly had a full and fair opportunity to litigate the legality of the searches in the Maryland courts. Thus, under *Stone*, Wilks's Fourth Amendment claims are barred from consideration here.

## Conclusion

The record has established and this court has determined that Wilks is not entitled to federal habeas relief. There is no basis upon which to find constitutional deficiencies in the state court proceedings, and Wilks has failed to rebut the presumption of correctness of the findings of

---

[2]      In his reply, Wilks contends that respondent's answer is "one-sided" and "biased" and that the Court of Special Appeals of Maryland did not fully review the consensual nature of the searches. ECF No. 26. The court disagrees and sees no need to hold an evidentiary hearing to develop additional facts as requested by Wilks under *Townsend v. Sain*, 372 U.S. 293 (1963), overruled on other grounds, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Under *Townsend*, a petitioner is entitled to an evidentiary hearing if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Townsend*, 372 U.S. at 313

fact underlying the rejection of his grounds on appellate review.  Additionally, a certificate of appealability is not warranted as it may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U.S.C.§ 2253(c)(2).

Accordingly, the petition shall be dismissed with prejudice and a certificate of appealability shall not issue.  A separate Order follows.

DATED this $\underline{23}$ day of May, 2014.

BY THE COURT:

_____

James K. Bredar
United States District Judge

11